IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Peggy Suzanne Miechkota, ) | |
| ) | |
| Petitioner, ) | |
| ) | **ORDER ON REPORT AND** |
| vs. ) | **RECOMMENDATION** |
| ) | |
| Michael Chertoff, Secretary of the ) | Civil No. 3:07-cv-105 |
| Department of Homeland Security, et al. ) | |
| ) | |
| Respondents. ) | |

Before the Court are a habeas petition and two motions filed by the parties, as well as a Report and Recommendation from the Honorable Karen K. Klein, United States Magistrate Judge. Petitioner Peggy Miechkota has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, asserting that she has a good faith claim to United States citizenship and therefore she may not be lawfully detained or removed from the country (Doc. #1). Miechkota has also filed a Motion to Stay Removal from the United States (Doc. #8). Respondents have filed a Motion to Dismiss the Petition for Writ of Habeas Corpus on the grounds that this Court lacks subject matter jurisdiction (Doc. #11).

On January 24, 2008, Magistrate Judge Klein held a hearing on the matter, and the parties argued the merits of both the Motion to Stay and the Motion to Dismiss. On January 31, 2008, Magistrate Judge Klein issued a Report and Recommendation recommending that the Motion to Stay Removal be denied, that the Motion to Dismiss be granted, and that the Petition for Writ of Habeas Corpus be dismissed (Doc. #22). The primary basis for Magistrate Judge Klein's recommendation is that this Court lacks subject matter jurisdiction over the habeas petition under the REAL ID Act.

1

Miechkota has filed an objection to the Report and Recommendation (Doc. #23). Miechkota contends this Court has jurisdiction over her habeas petition, even after the REAL ID Act, because she claims to be a citizen, not a national, of the United States. She argues the provisions of the REAL ID Act which vest exclusive jurisdiction in the courts of appeals only apply to aliens, not citizens. Miechkota further contends the Report and Recommendation is in error because it concludes there is still an avenue of relief for her in the court of appeals, even though the 30-day time limit to file a petition for review has passed. Miechkota also argues she should not be required to exhaust her administrative remedies with regard to her N-600 application for citizenship because exhaustion would be futile.

In accordance with Rule 72.1(E)(4) of the Local Rules of Court for the District of North Dakota, the Court will review de novo those portions of the Report and Recommendation to which a specific objection has been made.

## FACTUAL BACKGROUND

Because the Report and Recommendation contains much of the factual and procedural background in this matter, the Court will only briefly restate the relevant facts here.

Initially, it should be noted that Miechkota's habeas petition asserts many facts about her personal background, including the dates of her residence in the United States and Canada. At least one of these asserted facts is contradicted by other documents in the record.[1] The Court views the

---

[1] In particular, the Court notes Miechkota's habeas petition asserts that she lived in the United States from 1977 to 1988, and that she "left the United States for Canada in 1988." Pet. for Writ of Habeas Corpus, at ¶ 18. Certain immigration records show that Miechkota departed from the United States to Canada in 1986. Exs. in Supp. of Pet. for Writ of Habeas Corpus, at 5, 29. This factual dispute may be determinative to Miechkota's citizenship claim, as she contends she was vested with United States citizenship on November 14, 1986, the enactment date of the Immigration and Nationality Act Amendments of 1986, based in part on her presence in the United States on that date.

recitation of these facts in the Report and Recommendation only as a matter of general background, and they should not be used as factual findings in any other proceeding determining Miechkota's claim to United States citizenship.

Miechkota was born in Canada in 1967 and is a citizen of Canada. She has lived in both the United States and Canada at various points in her life, and has frequently traveled between the two countries. Miechkota has been living in the United States since 1997. Whether she has been living in the United States legally since that time is a matter of some dispute.

On December 2, 2005, Miechkota was personally served with a Notice to Appear before the Immigration Court to show cause why she should not be removed from the United States. Exs. in Supp. of Pet. for Writ of Habeas Corpus, at 3-6. The Notice to Appear charged that Miechkota was subject to removal from the United States because she was a citizen of Canada, not a citizen of the United States, and she was an immigrant not in possession of the required documentation at the time of her application for admission to the United States.[2] The Notice to Appear stated that Miechkota was to appear before an immigration judge in Bloomington, Minnesota, at a date and time to be set.

A hearing was held before the Immigration Court on April 28, 2006, but Miechkota failed to appear. Exs. in Supp. of Pet. for Writ of Habeas Corpus, at 7-8. Immigration Judge Kristin W. Olmanson conducted the hearing *in absentia* and ordered that Miechkota be removed from the United States. About 18 months later, on October 19, 2007, Miechkota was arrested and detained based on the removal order. She has been detained in the Grand Forks County Jail, in the custody of the immigration authorities, since that date.

---

[2] It appears from the record that Miechkota was served with the Notice to Appear when she applied to enter the United States at a border crossing in Pembina, North Dakota. See Exs. in Supp. of Pet. for Writ of Habeas Corpus, at 3.

On November 7, 2007, Miechkota submitted an N-600 Application for Certificate of Citizenship, claiming citizenship through her mother, who is a United States citizen. Exs. in Supp. of Pet. for Writ of Habeas Corpus, at 9-20. In the N-600 application, Miechkota advanced the same arguments in support of United States citizenship which she makes in her habeas petition before this Court. On November 16, 2007, Miechkota received notification from U.S. Citizenship and Immigration Services that it intended to deny her application, and that she had 30 days to provide a written rebuttal and additional evidence. On November 30, 2007, Miechkota filed the instant Petition for a Writ of Habeas Corpus.

## DISCUSSION

Miechkota has raised several objections to the Report and Recommendation. In addition to addressing these objections, the Court will also address an additional issue not discussed in the Report and Recommendation.

### I. Whether This Court Has Subject Matter Jurisdiction over Miechkota's Claim to United States Citizenship

Miechkota objects to the Magistrate Judge's determination that this Court lacks subject matter jurisdiction over her habeas petition. Specifically, Miechkota argues the Report and Recommendation confuses the terms "citizenship" and "nationality," and that the courts of appeals only have exclusive jurisdiction to determine nationality claims, not citizenship claims. Miechkota further contends this Court must decide whether she is a citizen in order to determine whether there is jurisdiction over her petition.

After conducting a de novo review, the Court agrees with the reasoning of the Report and Recommendation on this issue. The Court concludes it lacks subject matter jurisdiction over

Miechkota's habeas petition, to the extent she claims to be a United States citizen not subject to detention or removal.

Miechkota has not objected to the Magistrate Judge's characterization of her habeas petition as a collateral attack on the removal order. Nevertheless, because the REAL ID Act vests the courts of appeals with the sole and exclusive jurisdiction to review "an order of removal," the Court finds it necessary to express its agreement with the Report and Recommendation on this point. See 8 U.S.C. § 1252(a)(5). Miechkota is clearly attacking the removal order here. She was arrested and has been detained on the basis of the removal order. She did not submit an N-600 Application for Certificate of Citizenship until after she was already in custody under the removal order. And in her habeas petition before this Court, Miechkota is resisting removal from the United States and has moved for a stay of removal. Based on all these circumstances, Miechkota's claim to citizenship in her habeas petition must be viewed as a challenge to the underlying removal order.

Section 1252(b)(5), Title 8 U.S.C., provides a specific procedure for judicial review of nationality claims in the removal context. Section 1252(b)(5) provides:

> (A) Court determination if no issue of fact
>
> If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.
>
> (B) Transfer if issue of fact
>
> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.

(C) Limitation on determination

The petitioner may have such nationality claim decided only as provided in this paragraph.

Miechkota acknowledges this provision, but contends it does not apply to her because she claims to be a citizen of the United States, not a national. Based on this distinction, Miechkota argues the court of appeals does not have exclusive jurisdiction over her citizenship claim. After carefully reviewing the relevant statutes and case law, the Court concludes Miechkota's attempt to distinguish citizenship claims from nationality claims under § 1252(b)(5) must be rejected.

First, and most importantly, Miechkota's argument is foreclosed by the statutory scheme. Section 1101, Title 8 U.S.C., provides definitions which apply to the statutes contained in Chapter 12, titled Immigration and Nationality. Section 1252(b)(5) is contained in Chapter 12, so the definitions of § 1101 apply to its terms. Section 1101(a)(22) defines the term "national of the United States" to mean "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." Based on this definition, it is clear that Miechkota's claim to United States citizenship falls within the purview of § 1252(b)(5), which applies "[i]f the petitioner claims to be a national of the United States."

Furthermore, a review of the case law shows that the courts of appeals have decided claims to United States citizenship under § 1252(b)(5). See United States v. Moussa, 302 F.3d 823, 824, 826-27 (8th Cir. 2002) (deciding Moussa's claim that he was a citizen not subject to removal brought in petition for review from removal order); see also Iasu v. Smith, 511 F.3d 881, 887-88 (9th Cir. 2007) (holding that the district court "plainly lacked habeas jurisdiction" after the REAL ID Act to determine Iasu's claim to citizenship, which was asserted as a challenge to his removal); Jordon v. Attorney Gen. of the U.S., 424 F.3d 320, 326 (3d Cir. 2005) (reaching the merits of Jordon's

6

claim to United States citizenship under § 1252, which makes "the courts of appeals, not district courts, the first and often last judicial arbiter of nationality claims"); Sebastian-Soler v. U.S. Attorney Gen., 409 F.3d 1280, 1283 (11th Cir. 2005) (deciding petitioner's claim that he was not subject to removal because he was either a citizen or a national of the United States); Minasyan v. Gonzales, 401 F.3d 1069, 1074 (9th Cir. 2005) (stating that when "a petitioner claims that he is a United States citizen and that he is therefore not subject to removal, we have jurisdiction to determine his nationality claim" under § 1252(b)(5)).

The Court notes there is a difference in status between a "citizen" and a "national," which is the primary basis for Miechkota's argument. See Fernandez v. Keisler, 502 F.3d 337, 341 (4th Cir. 2007) (recognizing that "[a]ll citizens of the United States are nationals, but some nationals are not citizens"). However, it is clear that claims to both citizen and national status are included in the term "national of the United States," as used in § 1252(b)(5). Therefore, the court of appeals has exclusive jurisdiction to decide Miechkota's claim that she is not subject to removal because is a United States citizen. It necessarily follows that this Court lacks jurisdiction to decide her citizenship claim. This Court also lacks jurisdiction to stay her removal from the United States pending a determination of her citizenship claim. See 8 U.S.C. § 1252(b)(3)(B) (providing that the court of appeals may stay the removal of an alien pending the court's decision on the petition for review).

## II. Whether Miechkota's Habeas Petition Asserting a Citizenship Claim Should Be Transferred or Dismissed

Because this Court does not have the jurisdiction to decide Miechkota's habeas petition, to the extent it challenges her removability from the United States on the grounds that she is a citizen, the Court must determine whether to dismiss or transfer the petition. The Magistrate Judge has

7

recommended that the petition be dismissed. After careful review of the applicable law, the Court agrees that Miechkota's habeas petition asserting a citizenship claim must be dismissed.

When the REAL ID Act went into effect on May 11, 2005, it contained a provision requiring that any habeas petitions challenging removal which were pending in the district courts were to be transferred to the court of appeals. Omolo v. Gonzales, 452 F.3d 404, 407 (5th Cir. 2006); Hanan v. Gonzales, 449 F.3d 834, 836 (8th Cir. 2006). When these pending habeas petitions were transferred, the courts of appeals treated them as petitions for review under 8 U.S.C. § 1252, and the 30-day filing deadline in that section did not apply. See Jordon v. Attorney Gen. of the U.S., 424 F.3d 320, 327 (3d Cir. 2005). Here, Miechkota's habeas petition was not pending on May 11, 2005, so transfer to the Eighth Circuit under that provision of the REAL ID Act would not be appropriate. See Iasu v. Smith, 511 F.3d 881, 888 (9th Cir. 2007); Wang v. Dep't of Homeland Security, 484 F.3d 615, 617 (2d Cir. 2007); Chen v. Gonzales, 435 F.3d 788, 790 (7th Cir. 2006).

The only other basis for transfer to the Eighth Circuit would be 28 U.S.C. § 1631, which provides for transfer to cure a lack of jurisdiction. Section 1631 provides that if a court lacks jurisdiction over a civil action, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . ." Under 8 U.S.C. § 1252(b)(1), a petition for review must be filed in the court of appeals "not later than 30 days after the date of the final order of removal." In this case, Miechkota was ordered removed by an immigration judge on April 28, 2006, and she never appealed that decision. Therefore, the order of removal has long been final, and the 30-day window to petition for review of the order in the court of appeals has passed. Because Miechkota's habeas petition could not have been brought as a petition for review in the Eighth Circuit at the time it was

filed in this Court, there may be no transfer under 28 U.S.C. § 1631. See Wang, 484 F.3d at 617-18 (holding that transfer to the Second Circuit under § 1631 was impermissible because Wang's petition would not have been timely filed under § 1252(b)(1), so the circuit court lacked jurisdiction). Based on the foregoing, the Court concludes there is no legal basis to transfer Miechkota's petition to the Eighth Circuit. Therefore, Miechkota's habeas petition challenging her removability must be dismissed.

### III. Whether Miechkota Has Any Other Avenue of Relief

In her objections to the Report and Recommendation, Miechkota acknowledges that the 30-day time limit to petition for review of the removal order in the Eighth Circuit has expired. She contends the Report and Recommendation is in error because it concludes she has an avenue of relief in the court of appeals, when she is in reality jurisdictionally foreclosed from review.

The Court recognizes that Miechkota is challenging her removal from the United States on the grounds that she is a United States citizen. If Miechkota were foreclosed from judicial review of her claim to citizenship, there may be serious constitutional concerns. See Iasu v. Smith, 511 F.3d 881, 891 (9th Cir. 2007). The Court also recognizes that the procedure which Miechkota must follow in asserting her citizenship claim has been unduly complicated by her failure to act between commencement of the removal proceedings in December 2005 and her arrest and detention on the removal order in October 2007.

Nevertheless, the Court agrees with the Report and Recommendation that Miechkota still has an avenue for asserting her citizenship claim. In Iasu v. Smith, 511 F.3d 881, 892-93 (9th Cir. 2007), the Ninth Circuit confronted a similar situation and concluded that judicial review was still available for the petitioner's citizenship claim. The Ninth Circuit held that if the petitioner filed a

motion to reopen before the immigration judge, the case would then be in the proper procedural posture for further review in the court of appeals. Id. at 893. The court explained its reasoning as follows:

> We cannot predict what an IJ or the BIA might do if a motion to reopen is filed. Presumably, alienage is also a jurisdictional prerequisite at the administrative level. However, even if an IJ denies such a motion to reopen as procedurally improper, and even if the BIA upholds the denial, a court of appeals could still review the jurisdictional issue on direct appeal from that denial. At that point, the case would be in a procedural posture so that 8 U.S.C. § 1252(b)(5) and § 1252(a)(2)(D) could be invoked . . . .

Id. (citations omitted).

In light of the foregoing, the Court concludes that Miechkota still has a way to assert her citizenship claim and obtain judicial review. She should file a motion to reopen with the immigration court and pursue it through the necessary administrative channels. If her motion to reopen is ultimately denied at the administrative level, she should file a petition for review in the Eighth Circuit within the 30-day time limit of 8 U.S.C. § 1252(b)(1). At that point, the Eighth Circuit will be able to address the merits of her citizenship claim, even if the immigration authorities declined to do so.

### IV. Miechkota's Objections Regarding the N-600 Application

The Court has reviewed Miechkota's objections regarding the Magistrate Judge's analysis of her N-600 Application for Certificate of Citizenship. First, Miechkota states that she is not requesting the Court to issue a Certificate of Citizenship, but rather to make a determination on the citizenship question as a matter of law. Although this distinction may be accurate, it has no effect on the outcome of this action. This Court simply does not have subject matter jurisdiction to determine her citizenship claim which arose in connection with the order of removal.

Miechkota also objects to the Magistrate Judge's conclusion that she has not exhausted her administrative remedies with regard to the N-600 application. However, the Court agrees with the analysis of this issue in the Report and Recommendation. Miechkota has not shown that it would be futile to pursue the N-600 application through administrative channels. Furthermore, the Court agrees that Miechkota's arguments regarding the N-600 application are a "thinly veiled attempt to circumvent the REAL ID Act's divestiture of this court's habeas jurisdiction in removal matters." Report and Recommendation, at 7. Miechkota's filing of an N-600 application after her arrest and detention on the removal order does not change the fact that her claim to citizenship arose in connection with the removal order, so this Court lacks jurisdiction over her claim.

The Court also notes its disagreement with one point made by the United States regarding this issue. In its response to Miechkota's objections, the United States contends Miechkota must pursue her N-600 application through the administrative process, and if her claim is denied, she may then seek a judicial declaration of citizenship under 8 U.S.C. § 1503(a). It appears to the Court that at this time, Miechkota may not seek a declaration of United States citizenship under that provision due to an exception relating to removal proceedings.

Section 1503(a) provides that "no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in such removal proceeding." This exception has been held to apply to concluded removal proceedings, although it does not forever bar jurisdiction over a claim first asserted in removal proceedings, "so long as a citizenship claim finds its genesis outside of the context of removal proceedings." See Rios-Valenzuela v. Dep't of Homeland Security, 506 F.3d 393, 398-99 (5th Cir.

11

2007). Here, because Miechkota's citizenship claim arose in the context of the proceedings to remove her from the United States, she is likely barred from seeking a declaration of citizenship under § 1503(a). The Court believes that Miechkota's best course of action is to file a motion to reopen, as discussed above, so she can raise her citizenship claim in the immigration court, and if necessary, petition for review in the Eighth Circuit under 8 U.S.C. § 1252(b)(5).

### V. Miechkota's Challenge to Her Continued Detention Without Bond

Miechkota's habeas petition primarily focuses on her claim to United States citizenship, which this Court lacks jurisdiction to decide. To the extent Miechkota challenges her detention on the grounds that she is citizen not subject to removal, this Court cannot review her claim. However, the REAL ID Act did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's continued detention under an order of removal. Ferry v. Gonzales, 457 F.3d 1117, 1131 (10th Cir. 2006); Lawrence v. Gonzales, 446 F.3d 221, 226-27 (1st Cir. 2006). Therefore, to the extent Miechkota's petition may be construed as a challenge to her post-removal-period detention without bond, this Court has the jurisdiction to review her claim.

Section 1231, Title 8 U.S.C., governs detention of aliens after a final order of removal has been entered. The statute provides that the alien shall be removed within a period of 90 days, with certain exceptions. 8 U.S.C. § 1231(a)(1). During the 90-day removal period, the alien must be held in custody, and after that time, the Government may continue detention in certain circumstances or release the alien under supervision. Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (citing § 1231(a)). Under § 1231(a)(1)(C), the removal period may be extended beyond 90 days if the alien acts to prevent his removal subject to an order of removal, and the alien may be detained during that

extended time. Furthermore, under § 1231(a)(6), an alien who is inadmissible under 8 U.S.C. § 1182 may be detained beyond the removal period.

The United States Supreme Court has held indefinite detention of an alien is not authorized under § 1231(a)(6). See Zadvydas, 533 U.S. at 699. Rather, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal." Id. "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. The Supreme Court has established a presumption that six months of detention is reasonably necessary to effectuate removal. Clark v. Martinez, 543 U.S. 371, 378, 386 (2005) (extending the six-month presumption to the category of inadmissible aliens under § 1231(a)(6)). After six months, "the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" Id. at 378 (quoting Zadvydas, 533 U.S. at 701).

The Court concludes that Miechkota's continued detention under the order of removal is proper at this time. Two of the statutory exceptions which permit detention beyond the 90-day period apply in this case. First, Miechkota is acting to prevent her removal from the United States by seeking judicial review of the order of removal, so she may be detained under § 1231(a)(1)(C). Second, she was ordered removed as an inadmissible alien under 8 U.S.C. § 1182(a)(7)(A)(i)(I), so she may be detained beyond the removal period under § 1231(a)(6). Miechkota has been detained since October 19, 2007, so the six-month presumption of reasonable detention under that section has not yet run. Even after the six-month period has run, Miechkota must be able to demonstrate that there is no significant likelihood of her removal in the reasonably foreseeable future. Miechkota is unlikely to meet that standard pending a decision on the merits of her citizenship claim, because if

she is determined not to be a citizen, there should be no difficulty removing her to Canada. See Clark, 543 U.S. at 386-87 (finding no substantial likelihood of removal to Cuba based in part on breakdown of repatriation negotiations with that country); Zadvydas, 533 U.S. at 684-86 (describing both petitioners in that case as people who had been repeatedly rejected for admission in those countries where they were to be removed).

Finally, the Court notes that if Miechkota successfully moves for a stay of removal pending judicial review of her removal order, the removal period will be re-set and begin running on the date of the court's final order. See 8 U.S.C. § 1231(a)(1)(B)(ii). Therefore, a stay of removal would appear to extend the time that she may be lawfully detained under the statute.

## DECISION

Miechkota's habeas petition primarily asserts that she is not subject to removal or detention because she is a United States citizen. After reviewing the Report and Recommendation, along with the entire file, the Court concludes the Magistrate Judge's position on this issue is correct. Accordingly, the Court **ADOPTS** the Report and Recommendation in its entirety. For the reasons set forth therein, in addition to the reasoning in this order, Miechkota's Motion to Stay Removal is **DENIED**, the United States' Motion to Dismiss is **GRANTED**, and Miechkota's Petition for Writ of Habeas Corpus asserting a claim to United States citizenship is **DISMISSED** for lack of subject matter jurisdiction.

To the extent Miechkota's habeas petition may be construed as a challenge to her post-removal-period detention without bond, this Court does have the jurisdiction to review her claim, and the petition is **DENIED**.

**IT IS SO ORDERED.**

Dated this 10th day of March, 2008.

                                                  /s/   Ralph R. Erickson
                                            Ralph R. Erickson, District Judge
                                            United States District Court